UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
SOUTHEASTERN DIVISION

| | | |
|---|---|---|
| CRAIG HILL, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | No. 1:20-CV-152-ACL |
| | ) | |
| CITY OF CARUTHERSVILLE, et al., | ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM AND ORDER

The matter is before the Court upon the filing of an amended complaint by self-represented plaintiff Craig Hill, an inmate at the Pemiscot County Jail, and motion for leave to commence this civil action without prepayment of the required filing fee. (ECF Nos. 4, 5). The Court previously directed plaintiff to file an amended complaint because the original complaint was not drafted on a Court-provided form. (ECF No. 3). For the reasons stated below, the Court finds that plaintiff does not have sufficient funds to pay any portion of the filing fee and will grant the motion. Additionally, the Court has reviewed the amended complaint and will dismiss it pursuant to 28 U.S.C. § 1915 for failing to state a claim upon which relief may be granted.

### 28 U.S.C. § 1915(b)(1)

Pursuant to 28 U.S.C. § 1915(b)(1), a prisoner bringing a civil action *in forma pauperis* is required to pay the full amount of the filing fee. If the prisoner has insufficient funds in his prison account to pay the entire fee, the Court must assess and, when funds exist, collect an initial partial filing fee of 20 percent of the greater of (1) the average monthly deposits in the prisoner's account, or (2) the average monthly balance in the prisoner's account for the prior six-month period. After payment of the initial partial filing fee, the prisoner is required to make monthly payments of 20

1

percent of the preceding month's income credited to his account. 28 U.S.C. § 1915(b)(2). The agency having custody of the prisoner will forward these monthly payments to the Clerk of Court each time the amount in the prisoner's account exceeds $10.00, until the filing fee is fully paid. *Id.*

In support of the instant motion, plaintiff submitted a copy of his inmate account statement. (ECF No. 6). A review of plaintiff's account indicates an average monthly deposit of $0.00 and an average monthly balance of $0.00. Plaintiff has insufficient funds to pay any portion of the filing fee. Accordingly, the Court will not assess an initial partial filing fee at this time.

### The Complaint and Amended Complaint

On July 13, 2020, plaintiff filed a handwritten document, titled "Civil Torch," which alleged that the City of Caruthersville (the "City"), County of Pemiscot (the "County"), Jeremy Lytle, and Bill Carter violated his constitutional rights. (ECF No. 1). Plaintiff appeared to bring claims for slander, false arrest, false imprisonment, loss of job and home, and a hate crime. The Court directed plaintiff to submit an amended complaint on a Court-provided form in compliance with Local Rule 2.06(A). (ECF No. 3).

On August 3, 2020, plaintiff filed an amended complaint on a Court-provided form. (ECF No. 4). Plaintiff brings this action pursuant to 42 U.S.C. § 1983 against the four original defendants: the City, the County, Jeremy Lytle (Prosecutor), and Bill Carter (Judge). Plaintiff sues all defendants in their official and individual capacities.

Plaintiff alleges that the defendants falsely charged him with "child endangerment in a sexual nature" and, as a result, he was slandered and deprived of his Fourteenth Amendment rights. Plaintiff states his claim in three short paragraphs:

> Craig Hill also suffer[e]d pain and lost [sic] of freedom. The County and City is well below stand[a]r[d] and, training along with manufactured cases.

2

This 14th Amendment violation of –

> Prosecutor misconduct of manufactured case. The Prosecutor has failed to change the child Endangerment in a sexual nature out of the computer data base system. Base[d] on these, manufactured charge – Craig Hill fear for his Life and Rights as a United States Citizen. (Note) "See" Craig Hill vs. Dodson US Case. Nevertheless the charges was manufactured and dismissed.
>
> The County and City failed to do an[] investigation and file the right charges. They slander my name and falsely charge me.

(ECF No. 4 at 5).

Plaintiff seeks $1,000,000 in damages.

### Legal Standard on Initial Review

Under 28 U.S.C. § 1915(e)(2), the Court is required to dismiss a complaint filed *in forma pauperis* if it is frivolous, malicious, or fails to state a claim upon which relief may be granted. An action is frivolous if it "lacks an arguable basis in either law or fact." *Neitzke v. Williams*, 490 U.S. 319, 328 (1989). An action fails to state a claim upon which relief may be granted if it does not plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007).

"A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Determining whether a complaint states a plausible claim for relief is a context-specific task that requires the reviewing court to draw upon judicial experience and common sense. *Id.* at 679. The court must assume the veracity of well-pleaded facts but need not accept as true "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements." *Id.* at 678 (citing *Twombly*, 550 U.S. at 555).

This Court must liberally construe complaints filed by laypeople. *Estelle v. Gamble*, 429 U.S. 97, 106 (1976). This means that "if the essence of an allegation is discernible," the court

3

should "construe the complaint in a way that permits the layperson's claim to be considered within the proper legal framework." *Solomon v. Petray*, 795 F.3d 777, 787 (8th Cir. 2015) (quoting *Stone v. Harry*, 364 F.3d 912, 914 (8th Cir. 2004)). However, even self-represented complaints must allege facts which, if true, state a claim for relief as a matter of law. *Martin v. Aubuchon*, 623 F.2d 1282, 1286 (8th Cir. 1980). Federal courts are not required to assume facts that are not alleged, *Stone*, 364 F.3d at 914-15, nor are they required to interpret procedural rules in order to excuse mistakes by those who proceed without counsel. *See McNeil v. United States*, 508 U.S. 106, 113 (1993).

## Discussion

After carefully reviewing the amended complaint and giving it the benefit of a liberal construction, the Court concludes that it must be dismissed against the City, the County, Lytle, and Carter.

### A. Defendants City of Caruthersville and County of Pemiscot

A local governing body, such as a city or a county, can be sued directly under § 1983. *See Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658, 690 (1978). In order to prevail on this type of claim, the plaintiff must establish the governmental entity's liability for the alleged conduct. *Kelly v. City of Omaha, Neb.*, 813 F.3d 1070, 1075 (8th Cir. 2016). Such liability may attach if the constitutional violation "resulted from (1) an official municipal policy, (2) an unofficial custom, or (3) a deliberately indifferent failure to train or supervise." *Mick v. Raines*, 883 F.3d 1075, 1079 (8th Cir. 2018). *See also Marsh v. Phelps Cty.*, 902 F.3d 745, 751 (8th Cir. 2018) (recognizing "claims challenging an unconstitutional policy or custom, or those based on a theory of inadequate training, which is an extension of the same").

4

Thus, there are three ways in which plaintiff can potentially prove the liability of either the City or the County.

First, plaintiff can show the existence of an unconstitutional policy. "Policy" refers to "official policy, a deliberate choice of a guiding principle or procedure made by the municipal official who has final authority regarding such matters." *Corwin v. City of Independence, Mo.*, 829 F.3d 695, 700 (8th Cir. 2016). For a policy that is unconstitutional on its face, a plaintiff needs no other evidence than a statement of the policy and its exercise. *Szabla v. City of Brooklyn, Minn.*, 486 F.3d 385, 389 (8th Cir. 2007). However, when "a policy is constitutional on its face, but it is asserted that a municipality should have done more to prevent constitutional violations by its employees, a plaintiff must establish the existence of a 'policy' by demonstrating that the inadequacies were a product of deliberate or conscious choice by the policymakers." *Id.* at 390. "A policy may be either a policy statement, ordinance, regulation, or decision officially adopted and promulgated by the municipality's governing body." *Angarita v. St. Louis Cty.*, 981 F.2d 1537, 1546 (8th Cir. 1992).

Second, plaintiff can establish a claim of liability based on an unconstitutional "custom." In order to do so, plaintiff must demonstrate:

> 1) The existence of a continuing, widespread, persistent pattern of unconstitutional misconduct by the governmental entity's employees;
> 2) Deliberate indifference to or tacit authorization of such conduct by the governmental entity's policymaking officials after notice to the officials of that misconduct; and
> 3) That plaintiff was injured by acts pursuant to the governmental entity's custom, i.e., that the custom was a moving force behind the constitutional violation.

*Johnson v. Douglas Cty. Med. Dep't*, 725 F.3d 825, 828 (8th Cir. 2013).

Plaintiff does not need to specifically plead the existence of an unconstitutional policy or custom. *See Crumpley-Patterson v. Trinity Lutheran Hosp.*, 388 F.3d 588, 591 (8th Cir. 2004).

5

However, at a minimum, the complaint must allege facts supporting the proposition that an unconstitutional policy or custom exists. *Doe ex rel. Doe v. Sch. Dist. of City of Norfolk*, 340 F.3d 605, 614 (8th Cir. 2003).

Finally, plaintiff can assert a municipal liability claim by establishing a deliberately indifferent failure to train or supervise. To do so, plaintiff must allege a "pattern of similar constitutional violations by untrained employees." *S.M. v Lincoln Cty.*, 874 F.3d 581, 585 (8th Cir. 2017). Under a failure to train theory, a defendant may be liable for deficient policies for training and supervising if (1) he had notice of the inadequacies, (2) his failure to train in a relevant respect evidences a deliberate indifference to the rights of others, and (3) the alleged deficiency in training procedures caused plaintiff's injuries. *See City of Canton v. Harris*, 489 U.S. 378, 390 (1989); *Larson by Larson v. Miller*, 76 F.3d 1446, 1454 (8th Cir. 1996). A defendant may have notice that his training practices are inadequate by two means: (1) where the failure to train is so likely to result in a violation of constitutional rights that the need for training is patently obvious, *Larkin v. St. Louis Hous. Auth. Dev. Corp.*, 355 F.3d 1114, 1117 (8th Cir. 2004), and (2) where a pattern of misconduct indicates that the defendant's responses to a regularly recurring situation are insufficient to protect constitutional rights, *City of Canton*, 489 U.S. at 390.

Here, plaintiff's complaint alleges that the City and County "failed to do an[] investigation and file the right charges." Plaintiff further alleges they acted "well below" the standard in "training" by allegedly manufacturing cases. Plaintiff has not, however, presented any allegations to support the proposition that his constitutional rights were violated because of an official policy or unofficial custom on the part of either the City or the County. He has not shown that a policy exists because none of his facts point to "a policy statement, ordinance, regulation, or decision officially adopted and promulgated by the municipality's governing body." *See Angarita*, 981

F.2d at 1546. Plaintiff has also not shown a "widespread, persistent pattern of unconstitutional misconduct" by County or City employees, much less that such misconduct was tacitly authorized by officials of either governing body. *See Johnson*, 725 F.3d at 828. Plaintiff does not allege that the investigation of his criminal case or filing of a subsequent charge was the result of an official policy or that such actions occurred more than one time to rise to the level of a persistent pattern of misconduct. The Court cannot infer the existence of an unconstitutional policy or custom from a single occurrence. *See Wedemeier v. City of Ballwin, Mo.*, 931 F.2d 24, 26 (8th Cir. 1991).

As to inadequate training, plaintiff only makes a conclusory statement that the City and County acted "well below" the standard in "training." The Court assumes plaintiff is alleging that defendant Prosecutor Lytle and defendant Judge Carter were improperly trained by the City or County. This assertion is merely a legal conclusion, and not entitled to a presumption of truth. *See Torti v. Hoag*, 868 F.3d 666, 671 (8th Cir. 2017) (stating that "[c]ourts are not bound to accept as true a legal conclusion couched as a factual allegation, and factual allegations must be enough to raise a right to relief above the speculative level"). *See also Faircloth v. Buccanan*, 2016 WL 4594145, at *2 (E.D. Mo. Sept. 2, 2016) (a conclusory allegation that prison officials did not properly train an unknown correctional officer fails to state a claim for relief). Plaintiff has not alleged in his complaint that County or City officials had notice of specific constitutional violations or were aware that deficiencies or inadequacies in their training or supervision were likely to cause a specific injury to plaintiff. Even self-represented plaintiffs are required to allege facts in support of their claims, and the Court will not assume facts that are not alleged. *See Stone v. Harry*, 364 F.3d 912, 914-15 (8th Cir. 2004).

Thus, plaintiff has failed to state a municipal liability claim against the City of

Caruthersville and Pemiscot County, and his claims against these entities will be dismissed. *See Ulrich v. Pope Cty.*, 715 F.3d 1054, 1061 (8th Cir. 2013) (affirming district court's dismissal of *Monell* claim where plaintiff "alleged no facts in his complaint that would demonstrate the existence of a policy or custom" that caused the alleged deprivation of plaintiff's rights).

### B. Official Capacity Claims against Defendants Jeremy Lytle and Bill Carter

Plaintiff's official capacity claims against Prosecutor Lytle and Judge Carter must be dismissed. In an official capacity claim against an individual, the claim is actually "against the governmental entity itself." *See White v. Jackson*, 865 F.3d 1064, 1075 (8th Cir. 2017). Thus, a "suit against a public employee in his or her official capacity is merely a suit against the public employer." *Johnson v. Outboard Marine Corp.*, 172 F.3d 531, 535 (8th Cir. 1999). *See also Brewington v. Keener*, 902 F.3d 796, 800 (8th Cir. 2018) (explaining that official capacity suit against sheriff and his deputy "must be treated as a suit against the County"); *Kelly*, 813 F.3d at 1075 (stating that a "plaintiff who sues public employees in their official, rather than individual, capacities sues only the public employer"); and *Elder-Keep v. Aksamit*, 460 F.3d 979, 986 (8th Cir. 2006) (stating that a "suit against a public official in his official capacity is actually a suit against the entity for which the official is an agent").

Here, both Prosecutor Lytle and Judge Carter are alleged to be employed by Pemiscot County, Missouri. Thus, an official capacity claim against them is actually a claim against Pemiscot County itself. In order to prevail on such a claim, plaintiff must establish the governmental entity's liability for the alleged conduct. *See Kelly*, 813 F.3d at 1075. To do so, he must demonstrate that the violation of his constitutional rights "resulted from (1) an official municipal policy, (2) an unofficial custom, or (3) a deliberately indifferent failure to train or supervise." *See Mick*, 883 F.3d at 1079. As discussed above, plaintiff has presented no factual

allegations regarding a Pemiscot County policy, custom, or failure to train. Therefore, the official capacity claims against Prosecutor Lytle and Judge Carter must be dismissed.

### C. Individual Capacity Claim against Defendant Jeremy Lytle

Plaintiff's individual capacity claims against Prosecutor Lytle must be dismissed. Prosecutors are immune from § 1983 liability so long as the actions complained of appear to be within the scope of prosecutorial duties. *Price v. Moody*, 677 F.2d 676, 677 (8th Cir. 1982). *See also Keating v. Martin*, 638 F.2d 1121, 1122 (8th Cir. 1980). The immunity enjoyed by prosecutors from § 1983 actions can be either absolute or qualified. *Brodnicki v. City of Omaha*, 75 F.3d 1261, 1266 (8th Cir. 1996). A prosecutor is entitled to absolute immunity if he or she is acting as an advocate for the State in a criminal prosecution. *Id.* On the other hand, a prosecutor is entitled to only qualified immunity when he or she pursues actions in an "investigatory" or "administrative" capacity. *Id.*

"Absolute immunity protects prosecutors against claims arising from their initiation of a prosecution and presenting a criminal case insofar as that conduct is intimately associated with the judicial phase of the criminal process." *Sample v. City of Woodbury*, 836 F.3d 913, 916 (8th Cir. 2016). For instance, "[t]he acts of preparing, signing, and filing a criminal complaint constitute prosecutorial functions, as they are advocacy on behalf of the government." *Schenk v. Chavis*, 461 F.3d 1043, 1046 (8th Cir. 2006).

Prosecutorial immunity depends on the functional nature of the prosecutor's activities; therefore, immunity is not defeated by "allegations of improper motive in the performance of prosecutorial functions." *Sample*, 836 F.3d at 916. Absolute immunity still applies even when there are allegations of malice, vindictiveness, or self-interest. *Reasonover v. City of St. Louis, Mo.*, 447 F.3d 569, 580 (8th Cir. 2006). Absolute immunity also "covers actions taken to initiate

a prosecution, even if those actions are patently improper." *Saterdalen v. Spencer*, 725 F.3d 838, 842 (8th Cir. 2013). *See also Woodsworth v. Hulshof*, 891 F.3d 1083, 1089 (8th Cir. 2018) (explaining "that a prosecutor is immune from suit even if he knowingly presented false, misleading, or perjured testimony or withheld or suppressed exculpatory evidence").

To the extent that plaintiff is alleging that Prosecutor Lytle violated his constitutional rights by preparing, signing, and filing a criminal complaint against him for child endangerment, such a claim fails because those are prosecutorial functions that entitle him to absolute immunity. *See Schenk*, 461 F.3d at 1046. As to plaintiff's allegation that Prosecutor Lytle manufactured a charge against him also does not defeat immunity. *See Woods v. Hutcheson*, 2018 WL 3458701, at *3 (E.D. Mo. July 17, 2018) ("suggesting that [defendant] acted with an improper motive" does "not defeat immunity"); *Parham v. Cann*, 2020 WL 134859, at *5 (E.D. Mo. Jan. 13, 2020) ("defendants are absolutely immune when fulfilling their duties as prosecutors by bringing charges against an individual," even when there is an allegation of a "false charge."); *Imbler v. Pachtman*, 424 U.S. 409, 409 (1976) (there is no fraud exception to prosecutorial immunity, and it is better to leave wrongs committed by dishonest officers unredressed than to subject the honest to the constant dread of retaliation). Plaintiff's statement that the charges were later dismissed is of no consequence. *See Woods*, 2018 WL 3458701, at *4 (dropping charges against plaintiff does not mean that prosecutor knowingly filed a false report).

Plaintiff provides no factual explanation as to what he means when he states that Prosecutor Lytle "manufactured" a charge and "failed to change the child endangerment in a sexual nature out of the computer." Other than providing these conclusory statements, there are no supporting facts to demonstrate how Prosecutor Lytle acted unlawfully. Furthermore, plaintiff does not provide any facts to establish that Prosecutor Lytle's investigation of the case was

10

somehow wrongful. The Court is not required to accept such conclusions as true. *See Torti v. Hoag*, 868 F.3d 666, 671 (8 Cir. 2017) ("Courts are not bound to accept as true a legal conclusion couched as a factual allegation, and factual allegations must be enough to raise a right to relief above the speculative level*"). See also Neubauer v. FedEx Corp.*, 849 F.3d 400, 404 (8th Cir. 2017) (stating that "[a] pleading that offers labels and conclusions or a formulaic recitation of the elements of a cause of action will not do").

Because plaintiff has failed to state a claim against Prosecutor Lytle, the individual capacity claim against him must be dismissed.

### D. Individual Capacity Claim against Defendant Bill Carter

The complaint is legally frivolous as to defendant Judge Carter because judges are "entitled to absolute immunity for all judicial actions that are not 'taken in a complete absence of all jurisdiction.'" *Penn v. United States*, 335 F.3d 786, 789 (8th Cir. 2003) (quoting *Mireles v. Waco*, 502 U.S. 9, 11-12 (1991)). Moreover, although Judge Carter is listed as a defendant in the caption of the complaint and described as a judge for Pemiscot County, plaintiff does not include any factual allegations of specific wrongdoing on the part of Judge Carter in the complaint. To be cognizable under § 1983, a claim must allege that the defendant was personally involved in or directly responsible for the incidents that deprived the plaintiff of his constitutional rights. *Martin v. Sargent*, 780 F.2d 1334, 1338 (8th Cir. 1985). Here, it is not clear from the allegations of the complaint exactly how Judge Carter is causally linked to, or bore any personal responsibility for a civil rights violation against plaintiff.

Because plaintiff has failed to state a claim against Judge Carter, the individual capacity claim against him must be dismissed.

Accordingly,

**IT IS HEREBY ORDERED** that plaintiff's motion to proceed in forma pauperis [ECF No. 5] is **GRANTED**.

**IT IS FURTHER ORDERED** that this action is **DISMISSED** without prejudice for failure to state a claim. *See* 28 U.S.C. § 1915(e)(2)(B). A separate order of dismissal will be entered herewith.

**IT IS FURTHER ORDERED** that an appeal from this dismissal would not be taken in good faith.

Dated this __14th__ day of August, 2020.

                                                STEPHEN N. LIMBAUGH, JR.
                                                UNITED STATES DISTRICT JUDGE